SANDUSKY FOUNDRY & MACHINE CO. v. DE LAVAUD et al.

(District Court, N. D. Ohio, E. D.    June 7, 1919.)

No. 372.

1. PATENTS &⊶174—IMPROVEMENTS—SPECIFICATIONS.
    One who merely makes and secures a patent for a slight improvement on a device or combination which performs the same function before as after the improvement, and whose patent enters an already crowded art, is protected against those only who use the very improvement that he describes, or a mere colorable evasion of it.

2. PATENTS &⊶328—CONSTRUCTION—INFRINGEMENT.
    The Millspaugh patent, No. 1,058,250, for an alleged novel method of utilizing centrifugal force in molding and casting metals, particularly bronze and ferrous metals, *held* limited by the prior art to the construction disclosed, and, as limited, not infringed by defendant's device.

3. PATENTS &⊶328—CONSTRUCTION—INFRINGEMENT—FILLING TROUGH.
    The Millspaugh patent, No. 1,047,972, for an improvement in the filling trough for a patented device for casting or molding metals, *held* not infringed by defendant's device.

In Equity. Bill by the Sandusky Foundry & Machine Company against D. Seusaud De Lavaud and others. Decree for defendants.
    See, also, 251 Fed. 631.

E. W. Marshall, of New York City, and Squire, Sanders & Dempsey, of Cleveland, Ohio, for plaintiff.

Frank J. Kent, of New York City, and Albert Lynn Lawrence, of Cleveland, Ohio, for defendants.

WESTENHAVER, District Judge. The bill in this case is in the usual form, charging infringement by defendents of certain patents, and praying an injunction. The defenses are the usual ones of invalidity for lack of novelty and lack of invention and noninfringement.

Complainant's bill is based on United States letters patent No. 1,058,-250, issued April 8, 1913, to William H. Millspaugh, and No. 1,047-972, issued December 24, 1912, to William H. Millspaugh, and by him assigned to the complainant. Claims 1, 2, and 4 of the first, and claim 1 of the last, mentioned patents only are in issue.

[1, 2] Broadly stated, the invention described and claimed in patent No. 1,058,250 relates to an alleged novel method of utilizing centrifugal force in the treatment of metals and other materials, and in molding and casting materials or other substances which are susceptible of being formed into different shapes under pressure. Specifically, the invention describes and claims several forms of apparatus, two of which only are material, by means of which it is said these objects may be obtained. On this hearing the controversy reduced itself to an apparatus for casting pipe from molten metal, particularly bronze and ferrous metals. The invention, however, is not limited to this specific purpose.

Centrifugal force as a process for casting metals and other plastic materials is old and well known in the patent art. A British patent, No. 3,197, for this process, was issued February 28, 1809, to Anthony George Eckhardt. Another British patent, No. 3,819, was issued September 27, 1878, to Taylor and Wailes, fully describing this process and the advantages claimed for it, and specifying an apparatus whereby it may be practiced.

Numerous other patents were also introduced in evidence on this hearing, describing and claiming different types of apparatus for the practicing of this process, not only as applied to metals, but to other materials and substances susceptible of being formed into different shapes under pressure. No showing, however, was made on this hearing that any of these devices, as applied to metals, had ever gone into general commercial use. The disclosures of this prior art are such that on this hearing the validity of complainant's patent was conceded to turn on what is called the "filling trough," particularly on the manner of mounting the trough and introducing it into and withdrawing it from the hollow rotary member or cylinder used for casting the metal into the form of pipes or tubes.

Claim 1 of patent No. 1,058,250 consists of the following elements: (1) A hollow rotary member (called a cylinder) having an internal surface of definite shape surrounding the axis of rotation; (2) a driving mechanism therefor; (3) a filling trough alleged to hold a predetermined amount of material rotatably and slidably supported, projecting into said member; and (4) a means for moving said trough. All these elements, except the third, are concededly old, and no invention is present or claimed, except as the combination of elements turns on the exact character of the filling trough, particularly the mounting of it in a rotatable and slidable manner. Claims 2 and 4, also in issue, are not sufficiently different to require separate notice.

Two forms of apparatus and two methods for introducing the molten or plastic material into this hollow rotary member or cylinder are described and specified in this patent. One is described in Fig. 1. No

258 F.—41

claim is made that this construction is infringed, or that it is within the terms of the three claims now in issue. In point of fact, this type of construction seems to me to be fully anticipated by the disclosures of British patent No. 5,009, issued November 15, 1881, to Fox and Whitley. For these reasons no further mention need be made of it. The other construction is that shown in Figs. 5, 6, and 7 and described in lines 90 to 130, page 2, and lines 1 to 14, page 3, of the specifications. The filling trough in this construction is preferably made in the form of a circular pipe, closed at the ends and having a longitudinal opening along one of its sides. It is supported by axially aligned shafts, which, it is said, are rotatably and slidably mounted in pedestal bearings, one at either end and outside of the cylinder. Literally this trough is not rotatably mounted, but is mounted to turn or tilt to an angle of 180 degrees. It may be partly slid out of the cylinder, and in operation this is necessary in order to permit the molten material to be poured into it. This trough, after being slid back into the cylinder, may be rapidly and quickly tilted or turned upside down, thus dropping the molten or plastic material into the cylinder. At the time the material is thus dropped, the cylinder is rapidly revolving. It is claimed for this method of introducing the molten metal that it distributes the same equally and uniformly, thus producing a finished pipe of uniform thickness throughout its length, and also that it affords a simple method of measuring or predetermining the quantity of material required to cast a pipe or tube.

An examination of the drawings and specifications conclusively shows that this construction allowed the withdrawal of the filling trough from the cylinder a sufficient distance only to permit it to be filled, and that no provision is made for removing either the trough or the pipe from the interior of the cylinder, but that after each operation an entire dismantling of the apparatus is required to remove the trough and the pipe. The pedestal supporting the shafts or trough is stationary and permanent, and is on a height in line with the center of the cylinder. Apparently one end plate is solid, prohibiting the withdrawal of the shaft at that end (see Fig. 7, 40–B). The cylinder itself is built in two sections, bolted together, and is driven by a chain running over a sprocket wheel, which surrounds the cylinder at or near its center. This cylinder is supported on two rollers (42) in fixed positions, and a third roller (43) resiliently supported, to allow for expansion of the cylinder, is placed above it to hold it in position.

The criticism made by defendants of this construction is undoubtedly sound, namely, that a complete dismantling of it after each operation is necessary, apparently to remove the trough, and certainly to remove the pipe. As a consequence, it is contended that complainant's alleged invention is inoperative and impracticable. Before considering this contention, the prior art relied on, either as an anticipation of complainant's alleged invention or as limiting or narrowing its construction, will be briefly considered.

Numerous prior art patents were introduced in evidence on this hearing, of which those claimed by defendant to be most pertinent

only will be noticed.    British letters patent No. 5,009, issued November 15, 1881, to Fox and Whitley, shows an apparatus with a cylinder or hollow rotary member and driving mechanism therefor, a runner or gate for introducing the molten metal into the cylinder and distributing it equally over the interior surface of the mold, and means for moving the runner or gate.   This runner or gate is not, however, a filling trough, but rather a spout or conduit, and it is not tiltably or rotatably mounted.   The runner or gate is introduced or projected through an opening into the cylinder, and the molten metal is brought to the gate or runner in a ladle operated back and forth upon tracks outside of the cylinder.   This, as already noted, is substantially the construction of Fig. 1 of complainant's patent.

British letters patent No. 8,578, issued June 4, 1884, to Fox and Whitley, is for an improvement on their earlier patent.   This patent discloses a runner or gate designed to hold a predetermined amount of material, and also means for rotating or tilting it on its axis within the mold, so as to dump the material evenly and uniformly.

United States letters patent No. 866,712, issued September 24, 1907, to C. D. Campbell, discloses a feed trough so mounted as to permit it to be slid into and withdrawn from the revolving cylinder, and also so as to permit it to be tilted or dumped.   This apparatus was not designed to cast metals by centrifugal force, but was designed to practice the process with concrete and similar plastic materials.   Complainant urges that the invention is not in the same art, but in an art so remote as to be without effect as an anticipation.   Defendants, on the other hand, contend that complainant's patent, by its terms, is so broad as to make relevant all patents designed to practice the process, whether as applied to metals or to other plastic materials.   In my opinion defendants' contention is correct.

United States letters patent No. 538,835, issued May 7, 1895, to S. L. Kneass, is, however, in the metal-casting art.   The specifications (lines 70 to 125, page 2) describe a feed trough rotatably mounted, and apparently also slidably mounted, although this latter method of operation, as a means of filling the trough or introducing material into a revolving cylinder, is not specifically mentioned or claimed.   It is, however, designed to measure the quantity of material and to distribute it evenly and uniformly within the mold.   The filling trough is so constructed that a part of it even when in position to be dumped, projects beyond the cylinder or mold, and dependence is placed upon the shape of the trough and the heights of its sides to insure the dropping of the material within the mold and to prevent the spilling of a part of it outside thereof.

These are the most pertinent patents in the prior art.   Differences between the inventions therein described and that of complainant's patent are apparent with respect to the other elements, but the similarities thereof with the element upon which the validity of complainant's patent depends, namely, the filling trough, are sufficiently pointed out by the foregoing review.   If they do not anticipate this element, they at least call for an application of the doctrine stated in Adams Electric Railway Co. v. Lindell Railway Co. (8 C. C. A.) 77 Fed.

432, 23 C. C. A. 223, and Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053. Judge Sanborn, in the case first cited, says:

"This is a broad claim, and it must be determined by the limitations placed upon this patent by the state of the art when the invention it protects was made, and by the specification and claims of the patentee which it contains. One who invents and secures a patent for a machine or combination which first performs a useful function is protected thereby against all machines and combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on a device or combination, which performs the same function before as after the improvement, is protected against those only who use the very improvement that he describes and claims, or mere colorable evasions of it. 'If one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute. But if the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled only to the specific form of device which he produces, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs.'"

Defendants' construction alleged to infringe contains a hollow rotary member of the same kind as is claimed in complainant's patent, a mechanism for driving the same, a filling trough rotatably and slidably mounted projecting into the hollow rotary member, and means for moving said trough. This filling trough differs, however, from the construction of Fig. 5 of complainant's patent. It may be filled, introduced into the cylinder, and withdrawn therefrom after the casting operation is complete, without dismantling the apparatus, either in whole or in part. The cast pipe or tube may likewise be withdrawn, and a special device at the end, opposite the filling end, is designed and attached for that purpose. This filling trough is not designed primarily to be withdrawn from the cylinder to be filled, although defendants' apparatus is so constructed as to admit of that method of operation. The filling is designed to be done by means of a hopper, with a conduit leading therefrom through the end plate into the filling trough. No question is made as to the efficient and successful operation of defendants' apparatus.

In view of the fact that complainant's construction must be held as limited by the prior art to that specifically prescribed, otherwise it must be held invalid for anticipation, I am of opinion that defendants' construction does not infringe, for the reason that the construction, mounting, and operation of the filling trough is so different that the two elements cannot be regarded as equivalent. In addition thereto, the water-cooling jacket surrounding the cylinder, the substitution of a sand core for an end plate and supporting shaft at the end opposite the filling end, and the provision of grappling hooks and apparatus for removing the pipe after casting at that end, create a new type of construction, so far different from complainant's and so much superior in practicability and operativeness, that it cannot be said to be an infringement of the crude and inoperative construction described and claimed by its patent.

Complainant, however, produced at the trial a model which it claims is its commercial form of apparatus. It is introduced in evidence as

Exhibit C. This apparatus is so constructed as to permit the complete withdrawal of the filling trough, both before and after each operation, without dismantling the apparatus. Provision is also made in it for the removal of the pipe from the end opposite the filling end. The defects of its patented construction are thereby partly, if not wholly, obviated. If this construction had been described and claimed in complainant's patent, the question of infringement would be much closer; it would depend on whether or not the addition of the water-cooling jacket, the substitution of the sand core for the end plate, and the provision of grappling hooks and other devices for removing the casting are merely additions to complainant's combination of elements within the rule of Weed Chain Tire Grip Co. v. Cleveland Chain & Manufacturing Co. (C. C.) 196 Fed. 213.

Complainant urges that the changes from its patented construction to its commercial construction are such changes and modifications as would have been obvious to any mechanic of ordinary skill, attempting to construct an apparatus according to the drawings and specifications of its patent. This contention cannot be admitted. In the first place, as already pointed out, complainant's invention is in a crowded art, in which many persons were working to accomplish the same result, and, if valid at all, can be sustained only for the specific type of construction therein disclosed and claimed. In the second place, as much, if not more, invention is required to obviate the defects in the patented construction, and to substitute therefor its new construction, as would be required to adapt any one of the several rotatably and slidably mounted troughs of the prior art to the uses and purposes for which the filling trough was adapted and designed in complainant's invention.

My conclusion is that complainant's patent No. 1,058,250, if valid, must be limited to the specific construction therein described and claimed, and that, in view of the narrow constructions thus required, and the impracticable, not to say inoperative, character of its apparatus, defendants' device cannot be said to infringe. In reaching this conclusion I am not overlooking the claims made by complainant of commercial success for its device. The evidence shows that complainant's device has not been manufactured, put on the market, and sold, but that, on the contrary, it has been used exclusively by complainant in its own foundry; that it has altogether constructed and used therein some six of its commercial form of apparatus, and that three licenses only have been granted by it to others to practice the centrifugal process of casting pipe or tubes.

Complainant also contends that it has manufactured and sold pipe commercially by use of its apparatus. The only support for these statements is the testimony of the inventor himself. How much pipe has been manufactured altogether, what part, if any, of it has been sold, when or during what periods of time the manufacture and sale have taken place, are not disclosed. This information was within the control of complainant. Defendants had developed and constructed their apparatus in a completed form prior to September, 1916, had advertised and described it fully in "The Iron Age," a technical journal

read by all persons interested in the metal-casting art, and had exhibited and demonstrated a completed apparatus at the Foundrymen's Convention in Cleveland in September, 1916. The licenses issued by complainant are of a subsequent date, and, under the circumstances, in the absence of a showing to the contrary, the inference cannot be permitted that such use and success as complainant's commercial form of apparatus has had is of an earlier date.

In my opinion no commercial success of complainant's apparatus, or public acquiescence therein, or any acceptance by those skilled in the art of this device as a solution of the problems involved in casting metals by centrifugal force, is shown, tending to support the validity of complainant's patent, or warranting a broad construction of its claims.

[3] Complainant's patent No. 1,047,972, although of an earlier date, was issued on an application filed later than the application which resulted in patent No. 1,058,250. It is for an improvement of the filling trough. Its object is to provide an apparatus for holding a large supply of molten metal in a position to be quickly dumped into a centrifugal casting machine. Two elements are provided to accomplish this object. One is a reservoir attached to the filling trough and outside of the cylinder. This element may be wholly disregarded, because no contention is made that it is used by defendant. The other element consists in partly closing the filling trough at each end, and leaving the opening through which the metal is dropped or poured of a lesser length than the trough; in other words, a section of the trough at each end is covered with a roof. In this way a certain proportion of the molten metal is confined within two closed ends, and is spilled out through the opening shorter in length than the filling trough. The supply of molten metal is thereby increased proportionately within the section of the mold corresponding to the opening in filling trough. Defendants do not use this form of filling trough.

The contention that defendants infringe rests upon a very flimsy foundation. As already stated, defendants' novel method of filling the trough is by means of a hopper connected by a conduit leading from the bottom thereof, through the end plate at the filling end, to the filling trough. A part of this conduit is of a lower level than the top of the filling trough, as a result of which a small quantity of the molten metal remains therein, and when the trough is dumped will either spill into the cylinder through the opening of the filling trough, or will spill outside of the cylinder through the open end of the conduit. Complainant asserts that, inasmuch as the conduit is roofed over by the end plate of the cylinder, this creates the equivalent of the roofed-over portion of the closed end of its filling trough.

This contention, in my opinion, is frivolous. This result was not designed, but is accidental, and, the evidence shows, was not an advantage, but a disadvantage so great, perhaps, as to make the filling device inoperative. The evidence of Mr. Wendt, who made defendants' first apparatus in the United States, tends to show that this method of filling was so far unsuccessful that defendant was obliged to abandon it, and partly to withdraw the filling trough from the cylin-

der in order to fill it, thereby practicing the same method of filling as that described in Fig. 5 of patent No. 1,058,250. Be that, however, as it may, infringement of claim 1 of patent No. 1,047,972 is not shown by these facts.

A decree may be taken in conformity herewith, dismissing complainant's bill, at its costs.